## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

_____
                                        :
THE HUNT IRREVOCABLE TRUST and          :
THE HUNT LEGACY TRUST                   :
                                        :
            Plaintiffs,                 :
                                        :
        v.                              :          C.A. No. 21-679-RGA
                                        :
AIR MEDICAL GROUP HOLDINGS, LLC,        :          ██████████████████
                                        :
            Defendant.                  :
_____

### REPORT & RECOMMENDATION

**I.      INTRODUCTION**

        In this breach of contract litigation, plaintiff Michael Cahill in his capacity as

Trustee of The Hunt Irrevocable Trust ("Hunt Trust") and Trustee of The Hunt Legacy

Trust ("Legacy Trust") (collectively, "Plaintiffs") alleges that defendant Air Medical Group

Holdings, Inc.[1] ("Defendant") breached a contract between the parties and/or unjustly

enriched itself when it received proceeds of an insurance claim that Plaintiffs had

retained when they sold several companies to Defendant in 2017.[2]  Presently under

consideration is Defendant's Motion to dismiss the Amended Complaint[3] for failure to

state a claim.[4]

        For the reasons discussed herein, it is recommended that Defendant's Motion be

denied.

_____

[1] Air Medical Group Holdings, Inc. is now known as Global Medical Response, Inc.
D.I. 12.

[2] D.I. 9 at ¶¶ 12–13.

[3] D.I. 9.

[4] D.I. 10.

## II.    BACKGROUND

In 2017, Plaintiffs sold several companies to Defendant.[5]  This sale is governed by a Purchase and Sale Agreement ("the Agreement").[6]  Part of that sale included an air ambulance company, Valley Med Flight, Inc. ("Valley Med'), that was owned by the Legacy Trust.[7]  "In 2016, an aircraft owned by Valley Med—a [Pilatus] PC-12/45 Turbo Prop airplane with tail number N5DM ('N5DM')—was tied down to the apron at the Grand Forks, North Dakota Airport when a stray mail car rolled across the tarmac and struck the aircraft, causing significant damage."[8] "The Legacy Trust and Valley Med opened a claim with their own insurance and made a claim against the insurance of the owner of the mail car, Integrated Airline Services, Inc. ('IAS')."[9] "When negotiations with IAS's insurance carrier stalled, Valley Med filed suit in November 2016 against IAS in an effort to preserve its claims against IAS and its right to IAS's insurance payout ('Insurance Lawsuit'), seeking at least $500,000."[10]

Meanwhile, "the Legacy Trust and Valley Med paid out of pocket approximately $300,000 to restore the N5DM, including inspection costs, temporary repairs to protect the craft, transport to a repair shop in Idaho, repairs, and manufacture of new wing skin at a shop in Switzerland."[11] "Legacy Trust and Valley Med also lost profits during the entire time the craft was out of operation."[12]

---

[5] D.I. 9 at ¶¶ 12–13.

[6] *Id.*; *see also* D.I. 9-1, Ex. A.  The Agreement specifies that Delaware law shall apply to the contract.  D.I. 9 at ¶ 3.

[7] D.I. 9 at ¶ 6.

[8] *Id.* at ¶ 7.

[9] *Id.* at ¶ 8.

[10] *Id.* at ¶ 9.

[11] *Id.* at ¶ 10.

[12] *Id.*

"From 2016 to 2017, Valley Med continued to negotiate with IAS's insurance carrier while the litigation was pending, and offers were made by IAS's insurance company as late as April and May 2017 to pay out insurance proceeds of $291,176.32 and $328,625.50, but the Legacy Trust and Valley Med felt these offers of insurance proceeds were inadequate to fully compensate them for their losses."[13]

"During this same time period, Plaintiff[s] w[ere] negotiating to sell the Legacy Trust's companies, including Valley Med, to Defendant Air Medical."[14] The Agreement was effective April 14, 2017.[15]

"During negotiations of the purchase with Air Medical, it became apparent that no settlement would be reached with IAS's insurance carrier before a deal was reached, so Plaintiff [Legacy Trust] informed Air Medical that they had already paid to repair the N5DM, were seeking to recover from IAS's insurance carrier, and wished to retain these proceeds when they arrived."[16]

"In 2020, the Insurance Lawsuit settled and the insurance proceeds from IAS's carrier were paid to Defendant, as the new owner of Valley Med."[17]  "Plaintiff[s] made demand on Defendant for payment of the insurance proceeds, as 'Retained Property' under the Purchase and Sale Agreement, but Defendant refused."[18]

Plaintiffs filed this suit on May 10, 2021.[19]  They amended the Complaint a month later.[20]  On July 10, 2021, Defendant moved to dismiss the Amended Complaint.[21]

---

[13] *Id.* at ¶ 11.

[14] *Id.* at ¶ 12.

[15] *Id.* at ¶ 13.

[16] *Id.* at ¶ 14.

[17] *Id.* at ¶ 20.

[18] *Id.* at ¶ 21.

[19] D.I. 1.

[20] D.I. 9.

[21] D.I. 10.

Plaintiffs oppose the motion.[22]  Briefing was complete on July 27.  In August, Judge Andrews referred the present motion to this judge.[23]

## III.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim for failure to state a claim upon which relief can be granted."  The purpose of a motion under Rule 12(b)(6) is to test the sufficiency of the complaint, not to resolve disputed facts or decide the merits of the case.[24]  "The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims."[25]  A motion to dismiss may be granted only if, after "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to the plaintiff, plaintiff is not entitled to relief."[26]  While the court draws all reasonable factual inferences in the light most favorable to a plaintiff, it rejects unsupported allegations, "bald assertions," and "legal conclusions."[27]

---

[22] D.I. 14.

[23] *See* Aug. 16, 2021 Oral Order.

[24] *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).

[25] *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotations and citations omitted); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007) ("[W]hen a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder.").

[26] *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (citing *Burlington*, 114 F.3d at 1420).

[27] *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (citations omitted); *see also Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997) (citations omitted) (rejecting "unsupported conclusions and unwarranted inferences"); *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983) ("It is not . . . proper to assume [plaintiff] can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged.").

To survive a motion to dismiss, a plaintiff's factual allegations must be sufficient to "raise a right to relief above the speculative level[.]"[28]  Plaintiffs are therefore required to provide the grounds of their entitlement to relief beyond mere labels and conclusions.[29]  Although heightened fact pleading is not required, "enough facts to state a claim to relief that is plausible on its face" must be alleged.[30]  A claim has facial plausibility when a plaintiff pleads factual content sufficient for the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.[31]  Once stated adequately, a claim may be supported by showing any set of facts consistent with the allegations in the complaint.[32]  Courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint, and matters of public record when reviewing a motion to dismiss.[33]

## IV.    DISCUSSION

This matter involves an action for breach of contract and unjust enrichment. Although Defendant has moved to dismiss under Rule 12(b)(6), the briefing on this motion reads like summary judgment.  In its briefing, Defendant essentially rewrites the Amended Complaint and inserts its own facts.  Next, Defendant presents a straw man for what it contends Plaintiffs' theory of breach must be.  Of course, based upon

---

[28] *Twombly*, 550 U.S. at 555 (citations omitted); *see also Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (citing *Twombly*, 550 U.S. at 555).

[29] *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

[30] *Id.* at 570; *see also Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) ("In its general discussion, the Supreme Court explained that the concept of a 'showing' requires only notice of a claim and its grounds, and distinguished such a showing from 'a pleader's bare averment that he wants relief and is entitled to it.'") (quoting *Twombly*, 550 U.S. at 555 n.3).

[31] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

[32] *Twombly*, 550 U.S. at 563 (citations omitted).

[33] *E.g., Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted).

Defendant's version of the facts and its narrow view of the alleged breach, Defendant argues that the claims against it fail to state a claim, are time barred, and should be dismissed.  Encompassed within the briefing are several arguments for dismissal.  First, Defendant contends the Amended Complaint fails to identify the express contract provision that was breached.[34]  Second, Defendant argues that the insurance proceeds paid to Defendant are–in fact–a settlement payment resulting from litigation to which Plaintiffs have no contractual right under the Agreement.[35]  Third, Defendant asserts that Plaintiffs' cause of action is time-barred under the Agreement, which provides an 18-month time limit for all claims for breaches of the pre-closing covenants in the Agreement.[36]  Finally, Defendant avers that the Agreement bars Plaintiffs' unjust enrichment claim.[37]

### A.    Matter Outside the Pleadings

As a preliminary issue, the matter outside the pleadings attached to, and discussed within, Defendant's opening brief must be addressed.

### 1.    The document attached to Defendant's opening brief

Plaintiffs attach redacted portions of the Purchase and Sale Agreement to the Amended Complaint.[38]  Defendant attaches to its opening brief a set of documents constituting some 250 pages of materials.[39]  Defendant offers little explanation for these documents other than that the portions of the Agreement attached to the Amended Complaint were "heavily redacted" and that "[a]n unredacted version is attached as

---

[34] D.I. 11 at 7–8.

[35] *Id.* at 8–14.

[36] *Id.* at 14–16.

[37] *Id.* at 16–17.

[38] D.I. 9-1, Ex. A.

[39] D.I. 11-1, Exs. 1–5.

Exhibit 1."[40]  Thereafter, Defendant's statement of facts cites to its own attached Exhibits 2–5 "[f]or ease of reference[,]"[41] even though these materials are largely duplicative of Exhibit A to the Amended Complaint.[42]  Defendant's briefing does not explain which of these 250 pages of materials is essential to its argument that the Amended Complaint fails to state a claim, but upon review, the only new matter related to the Agreement discussed by Defendant in the briefing is Article IX "Indemnification,"[43] specifically sections 9.01 and 9.10 of that document.[44]

Plaintiffs contend this is matter outside the pleadings that cannot be properly considered without converting the present motion to a motion for summary judgment under Rule 12(d).[45]  In its reply brief, Defendant argues as a matter of public policy that to fail to consider these materials would create a rule in which "a plaintiff [could] avoid dismissal of a breach of contract action by submitting only those portions of the contract it deems favorable, even where provisions in other parts of the agreement render the claim invalid."[46]

Under Rule 12(d), "[i]f on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."[47]  In that event "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the

---

[40] D.I. 11 at 3.

[41] *Id.* at 4 n.1; *see* D.I. 11-1, Exs. 2–5.

[42] *Compare, e.g.*, D.I. 9-1, Ex. A at page 19 of 19 (Schedule 4.13(b)), *with* D.I. 11-1, Ex. 4 at page 246 of 250 (Schedule 4.13(b)).

[43] D.I. 11-1, Ex. 1 at 49–55.

[44] D.I. 11 at 5, 14–16.

[45] D.I. 14 at 6–7.

[46] D.I. 15 at 1–2.

[47] Fed. R. Civ. P. 12(d).

motion."[48]  There is narrow exception to Rule 12(d) that "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."[49]  Here, Count I of the Amended Complaint is based on the Agreement.[50]  Defendant has attached a document to its briefing[51] that Plaintiffs acknowledge is the Agreement.[52]  Therefore, the court may consider this document without converting the motion under 12(d).

## 2.  Additional facts contained in Defendant's briefing

In addition to the attached documents, Defendant inserts facts outside the pleadings and the Agreement into its briefing.  For example, Defendant states that "Following the Closing, Valley Med continued to prosecute and fund the [Insurance] Lawsuit."[53]  This is a fact that is not in the Amended Complaint, and yet Defendant bases argument on this fact.[54]  The court will not convert the instant motion into a motion for summary judgment and, therefore, declines to consider any such new matter.[55]

---

[48] *Id.*

[49] *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citation omitted).

[50] D.I. 9 at ¶¶ 22–28.

[51] D.I. 11-1, Exs. 1–5.

[52] D.I. 14 at 6 n.6.

[53] D.I. 11 at 5.

[54] *E.g.*, *id.* at 2–3 ("Plaintiffs . . . seek to recover a settlement payment where Plaintiffs have neither funded nor participated in the underlying litigation or settlement negotiations since the sale of Valley Med more than three years ago.").

[55] *See also id.* at 14 n.2 (acknowledging that Defendant has raised disputes over the facts as alleged in the Amended Complaint and that Defendant will withdraw the argument as opposed to converting the motion to one for summary judgment).

B.      The Amended Complaint Provides Notice

Defendant argues that "Plaintiffs' breach of contract claim fails to satisfy basic notice pleading requirements" for failing to "identify the provision" of the Agreement allegedly breached.[56]  Defendant contends that Plaintiffs must identify a specific section number of the Agreement that has allegedly been breached.[57]  Plaintiffs contend that the Amended Complaint "points specifically to Schedule 4.13(b) and Exhibit E-1 of the Purchase and Sale Agreement attached in the Amended Complaint's exhibit when explaining that the Agreement obligates Defendant to recognize the insurance proceeds as retained property."[58]  Defendant replies that these schedules "do not themselves contain any obligations"[59] and that the "mechanism for transferring property listed in Schedule 4.13(b) and Exhibit E-1 is set forth in Section 6.06 of the Purchase and Sale Agreement and Plaintiffs have specifically disclaimed any reliance on Section 6.06."[60]

As to notice, there is no doubt that Defendant is on notice that the claim against it relates the to the payment it received as part of the settlement of the Insurance Lawsuit for damages to the N5DM airplane.[61]  Defendant demonstrates this notice by disputing the facts associated with what it characterizes as "the underlying litigation or settlement negotiations[.]"[62]

Under Delaware law, "[i]n order to survive a motion to dismiss for failure to state a breach of contract claim, the plaintiff must demonstrate: first, the existence of the

---

[56] D.I. 11 at 7–8.

[57] *Id*.

[58] D.I. 14 at 7.

[59] D.I. 15 at 3.

[60] *Id* (footnote omitted).  To call this a disclaimer of all theories of breach associated with Section 6.06 is an overstatement.  Plaintiffs clearly disclaim Section 6.06(a) but not 6.06(b).  D.I. 14 at 8.

[61] D.I. 11 at 2–6.

[62] *Id*. at 1–2.  The court cannot consider these disputed facts in this Report and Recommendation.  *See supra* note 26.

contract, whether express or implied; second, the breach of an obligation imposed by that contract; and third, the resultant damage to the plaintiff."[63]  Here, the Agreement is an express contract,[64] and there is no dispute as to its validity.

As to the obligation imposed by the contract, Sellers in their warranties disclosed the Insurance Lawsuit.[65]  In Section 4.13, Sellers identified that under any of the Companies' insurance policies there were no "outstanding material unpaid [insurance] claims of the Companies," except those identified in Schedule 4.13(b).[66] In Schedule 4.13(b), Sellers disclosed "outstanding insurance claims that have not yet been paid relating to the N5DM aircraft[.]"[67]  The schedule states "[t]he Company has paid to fully repair the N5DM aircraft, and that aircraft is now back in service."[68]

---

[63] *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003) (footnote and citations omitted).

[64] D.I. 9-1, Ex. A.

[65] *Id.* at 19, 47.  Both Section 4.11 and 4.13 are in Article IV of the Agreement, which describes "Representations and Warranties of Sellers Concerning the Companies." D.I. 11-1, Ex. 1 at 12–25.  This Article is informational and identifies, among other things, pending litigation and insurance claims related to the Companies.  Section 4.11 and Schedule 4.11 of the Agreement identifies ongoing litigation between Valley Med and "Cargo Airport Services USA, LLC, d/b/a Integrated Airline Services, Inc. for $1 million in damages that resulted when a mail cart was blown into a plane."  D.I. 9-1, Ex. A at 47 (Schedule 4.11).  These damages and the ensuing "Insurance Lawsuit" are also discussed in the Amended Complaint.  D.I. 9 at ¶¶ 6–11.

[66] D.I. 9-1, Ex. A at 20–21.

[67] *Id.* at 55.

[68] *Id.*

The mechanism for transferring property, including Business Assets[69] and "Retained Property," is discussed in Section 6.06, which is part of Article VI "Pre-Closing Covenants" of the Agreement.[70]  For example, Section 6.06(a) states that:

> Prior to the Closing, Sellers shall (at their sole cost and expense) implement the transactions described in Exhibit E-2 (the "Restructuring Plan") in accordance with the steps (including any elections) described therein, including (i) the transfer to Sellers or their designee of all the Companies' right, title and interest in the assets and property listed on **Exhibit E-1 under the heading "Retained Property" (the "Retained Property")** . . .[71]

This section further states "it being acknowledged that the parties have agreed that the Retained Property is not being sold to . . . Buyer[.]"[72]  In Exhibit E-1 listing miscellaneous "Retained Property," Sellers identified:

> To the extent not included in working capital, **insurance proceeds** related to the items listed in Schedule 4.13(b) of the Disclosure Schedule **and insurance proceeds** received by the Companies on or after the date of the Agreement for repair costs of Aircraft which have been paid by the Companies prior to the date of the Agreement.[73]

Taking the facts alleged in the Amended Complaint as true and viewing the Agreement in the light most favorable to the Plaintiffs, the parties agreed that Sellers

---

[69] "Business Assets" are defined to be exclusive of "Retained Property."  D.I. 11-1, Ex. 1 at 56 ("'Business Asset' means any assets required for or used (other than on an incidental basis) in the operation or conduct of the Business, including, among other things, Aircraft, engines, Government Licenses and the Acquired Property, but excluding any Retained Property.").

[70] D.I. 11-1, Ex. 1 at 28–38.

[71] D.I. 9-1, Ex. A at 36–37.

[72] *Id.* at 37.

[73] *Id.* at Page 16 of 19 (emphasis added) (Exhibit E-1).  The Amended Complaint alleges that "[t]his Retained Property reserved not only insurance proceeds from Plaintiff's own policies—as set forth in Schedule 4.13(b)—but also all other 'insurance proceeds received by the Companies on or after the date of the Agreement for repair costs of Aircraft which have been paid by the Companies prior to the date of the Agreement.'"  D.I. 9 at ¶ 19.

would sell Buyer (among other things) Valley Med and the N5DM aircraft, but that the N5DM insurance claims and the proceeds from the Insurance Lawsuit were not sold to Buyer.[74]

With respect to breach and damages, Plaintiffs alleges that it and Valley Med had paid approximately $300,000 to fix the N5DM aircraft and had suffered economic losses during the time it was being fixed.[75]  Prior to the sale of Valley Med to Defendant in 2017, Plaintiffs and Valley Med had turned down settlement offers from IAS's insurance company.[76]  Plaintiffs allege that the Insurance Lawsuit settled in 2020 "and the insurance proceeds . . . were paid to Defendant, as the new owner of Valley Med."[77]

Plaintiffs alleged that:  (a) they "retained all insurance proceeds related to the N5DM" under the Agreement; (b) Defendant breached the Agreement when it "obtained the insurance proceeds from the N5DM damage and Insurance Lawsuit, but refuse[d] to pay the proceeds to Plaintiff[s]"; and (c) Plaintiffs suffered damages.[78]  This is sufficient to state a claim for breach of contract.

The cases cited do not suggest a different result beyond the elements of notice discussed above.  In *Novipax Holdings v. Sealed Air Corporation*, which is an unpublished case from Delaware Superior Court, the court read the parties' obligations

---

[74] In view of the length of the Purchase and Sale Agreement and the discussion herein related to Section 6.06(b), although it is apparent that Plaintiffs could claim that Defendant breached this specific covenant, it is not apparent that this is the only provision that may have allegedly been breached.  These contentions should be more thoroughly developed in discovery.  In addition, elsewhere in the Agreement, such as the survival clause of Section 9.01, the parties refer to "[t]he representations, warranties, covenants and agreements set forth in this Agreement[.]"  D.I. 11-1, Ex. 1 at 49.  This language acknowledges that beyond the specific "representations, warranties, [and] covenants" there are also "agreements" contained within the larger Agreement.  The court views Exhibit E-1 to be, at a minimum, one of those "agreements."

[75] D.I. 9 at ¶ 10.

[76] *Id.* at ¶¶ 11, 27.

[77] *Id.* at ¶ 20; *see also id.* at ¶ 25.

[78] *Id.* at ¶¶ 22–28.

found in various schedules to a contract,[79] but did not establish a broader rule that any information contained within a schedule is suitable to establish an obligation.  And in the *FinancialApps, LLC v. Envestnet, Inc.* matter, Judge Burke noted that the counterclaim did not "specifically reference the section number of the MSA provision said to be breached" but recommended dismissing the counterclaim, because it was confusing and failed to provide "fair notice of the claim[.]"[80]  Finally, in *Anderson v. Wachovia Mortgage Corp.*, which was cited by *FinancialApps*, Judge Robinson dismissed the claim, noting that plaintiff did not "even mention the breach of contract claim in their brief opposing defendants' motion to dismiss."[81]  In the case at bar, the Agreement, including the attached schedules and exhibits, demonstrates that the parties intended for the Retained Property to remain with Sellers.  Plaintiffs have opposed the motion and have presented argument.  Moreover, Defendant is on notice of the claim against it.

### C.    Characterizing the "insurance proceeds"

Plaintiffs allege that "[i]n 2020, the Insurance Lawsuit settled and the insurance proceeds from IAS's carrier were paid to Defendant, as the new owner of Valley Med."[82]  Defendant argues that because the parties "distinguished between 'insurance proceeds' and the [Insurance] Lawsuit" in the Agreement, there is no contractual right to the settlement payment.[83]

Defendant's argument is essentially that: (a) in Section 4.13, Schedule 4.13(b), or Exhibit E-1, Sellers never identified "proceeds from litigation or a settlement with

---

[79] *Novipax Holdings LLC v. Sealed Air Corp.*, No. CVN17C031682EMDCCLD, 2017 WL 5713307, at *15 (Del. Super. Ct. Nov. 28, 2017).

[80] *FinancialApps, LLC v. Envestnet, Inc.*, No. CV 19-1337-CFC-CJB, 2020 WL 4569466, at *4 (D. Del. July 30, 2020).  Defendant overstates Judge Burke's reasoning as a rule.

[81] *Anderson v. Wachovia Mortg. Corp.*, 497 F. Supp. 2d 572, 581 n.17 (D. Del. 2007).

[82] D.I. 9 at ¶ 20.

[83] D.I. 11 at 8–14.

IAS"[84] which is a third party; and (b) the monies Defendant received was a "settlement payment" and not "insurance proceeds" as alleged.[85]  For the reasons discussed below, Defendant's arguments here lack merit, discount the allegations in the Amended Complaint, and are therefore not appropriate in a Rule 12 motion.

### 1.    Exhibit E-1 clearly identifies insurance proceeds from third-party insurers

As to the first argument, Defendant goes to great lengths to interpret the Agreement[86] and to argue that Schedule 4.13(b) only includes "insurance policies maintained for the Companies' benefit."[87]  Paragraph 19 of the Amended Complaint acknowledges this limitation to Schedule 4.13(b),[88] which is referenced in the first half of the relevant sentence in Exhibit E-1 as reproduced below:

| | | |
|---|---|---|
| Miscellaneous | To the extent not included in working capital, insurance proceeds related to the items listed in Schedule 4.13(b) of the Disclosure Schedule and insurance proceeds received by the Companies on or after the date of the Agreement for repair costs of Aircraft which have been paid by the Companies prior to the date of the Agreement. | N/A |

The Amended Complaint then alleges that the second half of that sentence in Exhibit E-1 encompasses all other "insurance proceeds received by the Companies on or after the date of the Agreement for repair costs of Aircraft which have been paid by the Companies prior to the date of the Agreement"[89]  As discussed above, this is a plausible reading of Exhibit E-1 and a basis on which to grant relief.

---

[84] *Id.* at 9.

[85] *Id.* at 11–14.

[86] D.I. 11 at 8–11.

[87] *Id.* at 11.

[88] D.I. 9 at ¶ 19 ("This Retained Property reserved not only insurance proceeds from Plaintiff's own policies—as set forth in Schedule 4.13(b)—. . . .").  Defendant cites, and emphasizes, this specific language from the Amended Complaint in its opening brief. D.I. 11 at 11.

[89] D.I. 9 at ¶ 19.

### 2.    The alternative terminology and facts outside the pleadings introduced by Defendant cannot be considered

Defendant insists on using its own terminology to describe the facts alleged in the Amended Complaint, for example, identifying the alleged "Insurance Lawsuit"[90] instead as a "Negligence Lawsuit."[91]  This terminology and the accompanying arguments contradict the facts alleged in the Amended Complaint and introduce additional facts not found in the pleadings.

After arguing that the Insurance Lawsuit is—in fact—a tort claim that cannot yield "insurance proceeds,"[92] Defendant states that it "recognizes that Plaintiffs may respond that Plaintiffs' involvement in the Lawsuit is an issue of fact" and offers that "to the extent the Court views this as an issue of fact, Air Medical would prefer to withdraw this argument in favor of maintaining this motion as a motion to dismiss as opposed to converting it to a motion for summary judgment."[93]  Defendant's briefing does not accept the facts alleged in the Amended Complaint as true.  Instead, Defendant has presented the court an entangled mess of disputed facts and argument.  Therefore, the court declines to convert this motion into one for summary judgment and has not considered the arguments presented in Sections II.b. of Defendant's opening and reply briefs.[94]

---

[90] D.I. 9 at ¶ 20.

[91] D.I. 11 at 8–14.

[92] *Id.* at 11–14.  Much of Defendant's argument here is built around a Third Circuit opinion applying Pennsylvania law to the exemptions to the U.S. Bankruptcy Code in which a debtor sought to exempt a prospective tort claim (which is not exempt) from the bankruptcy estate by categorizing it as "insurance proceeds" (which is exempt).  *Kollar v. Miller*, 176 F.3d 175, 178–83 (3d Cir. 1999).  Although the Third Circuit concluded that under Pennsylvania law, the debtor could not claim such an exemption, it is wholly unclear how this case law applies to a breach of contract matter applying Delaware law.

[93] D.I. 11 at 14 n.2.

[94] *Id.* at 8–14; D.I. 15 at 4–7.

### D.    Plaintiff's claims are not time barred

Defendant argues that Plaintiff's breach of contract claims are time barred both under the survival clause of the Agreement and Delaware's statute of limitations for breach of contract actions.[95]

Delaware law provides that no party may assert a claim for breach of contract "after the expiration of 3 years from the accruing of the cause of such action[.]"[96]  There is an exception to this statutory period—parties to a Delaware contract may opt to limit claims to a shorter or longer period, not to exceed 20 years.[97]  Regardless of the time period, "[a] breach-of-contract claim 'accrues and the Statute begins to run at the time the contract is broken, not at the time when actual damage results or is ascertained.'"[98]

### 1.    Delaware's statute of limitations has not run

The Amended Complaint alleges that Defendant breached the Agreement in 2020 when it received the N5DM insurance proceeds and refused to pay these proceeds to Plaintiffs.[99]  Under these facts as alleged, Plaintiffs' filing of this suit in May 2021 is well within the 3-year statutory period and is, therefore, not time barred.

---

[95] D.I. 11 at 14–16.

[96] 10 Del. C. § 8106(a).

[97] *Id.* at § 8106(c) ("Notwithstanding anything to the contrary in this chapter . . . an action based on a written contract, agreement or undertaking involving at least $100,000 may be brought within a period specified in such written contract, agreement or undertaking provided it is brought prior to the expiration of 20 years from the accruing of the cause of such action.").

[98] *Lehman Bros. Holdings, Inc. v. Kee*, No. 415, 2020, 2021 WL 5816615, at *4 (Del. Dec. 6, 2021) (quoting *Worrel v. Farmers Bank of State of Del.*, 430 A.2d 469, 472 (Del. 1981)).

[99] D.I. 9 at ¶¶ 20–21, 25.

### 2.    Section 6.06(b) obligations "following the Closing" are not barred by the Agreement's 18-month limitations period

Defendant also speculates that Plaintiffs' theory of breach must be that Defendant breached Section 6.06(b),[100] which required Buyer/Defendant to transfer the Retained Property, including the N5DM insurance proceeds, "'promptly' after closing" in 2017.[101]  Defendant contends that any claim for failing to transfer those proceeds would have been at closing in 2017[102] and any claim for breach brought in 2021 would be more than three years thereafter and untimely under Delaware's statute of limitations.

In addition, with respect to Section 6.06(b), Defendant argues that Plaintiffs' cause of action is also time-barred under the survival clause in Article IX, Section 9.01 of the Agreement,[103] because it "unambiguously provides that claims for breach of the pre-closing covenants in the agreement shall survive for 18-months from the closing date."[104]  These arguments lack merit for at least two reasons.

First, Defendant implies that some unknown and additional "formal paperwork" was required to transfer the insurance proceeds as Retained Property for "any such breach [of Section 6.06(b) which] occurred following closing in 2017[.]"[105]  Plaintiffs allege that the Agreement is that paperwork.[106]  The court agrees with Plaintiff.[107]  The

---

[100] Plaintiffs disclaim any breach of Section 6.06(a).  D.I. 14 at 14 ("Defendant's presumption that Hunt Trust's claim implicates breach of Section 6.06(a), which relates to a pre-closing contractual requirement, is in error.  Section 6.06(a) contains only obligations directed at Hunt Trust as the seller, and not Defendant as buyer.").

[101] D.I. 11 at 15–16.

[102] Nothing in the pleadings indicates when the "Closing" was.  *See generally* D.I. 9.

[103] D.I. 11-1, Ex. 1 at 49.

[104] D.I. 11 at 15.

[105] D.I. 15 at 8–9.

[106] D.I. 14 at 15.

[107] Nothing in the pleadings or the Agreement suggests that—prior to the payout of the N5DM insurance proceeds in 2020—there was any additional "right, title and interest" to transfer.

only remaining aspect of the transfer of the N5DM insurance proceeds was for Defendant to send the money to Sellers/Plaintiffs when the matter settled.[108]  Therefore, a claim for the breach of Section 6.06(b) would accrue in 2020 and not some earlier date.

Second, Section 6.06(b) is a covenant related to acts "following the Closing," and the 18-month limitations period of the Agreement's survival clause does not apply to it. Section 6.06(b) states that:

> If any Retained Property or Retained Liabilities remain vested in any Company **following the Closing**, Buyer shall take and shall cause such Company to take all actions necessary **to promptly transfer** such Retained Property at Sellers' sole cost and expense (including any payment and Retained Liability) to Sellers or its designee for no further consideration (and Sellers or such designee shall take and assume such Retained Property and Retained Liabilities).[109]

As it pertains to obligations "following the Closing," the plain text of Section 9.01(iii) states that the 18-month window does not apply to those obligations:

> 9.01 Survival. The representations, warranties, covenants and agreements set forth in this Agreement shall survive the execution and delivery of this Agreement and the consummation of the transactions contemplated hereby until the Survival Date and shall thereafter be of no further force or effect. For purposes of this Agreement, the "Survival Date" shall mean the eighteen (18)-month anniversary of the Closing Date; **provided that . . . . (iii) each other covenant and agreement of any party which by their terms are to be performed or observed following the Closing shall survive the Closing until fully performed or observed in**

---

[108] Defendant also argue that Sellers/Plaintiffs breached the Agreement by failing to include the cost of the disclosed Insurance Lawsuit as a Retained Liability in the restructuring plan.  D.I. 15 at 8–9 & n.4.  This is matter outside the pleadings.  It is also a counterclaim.  Regardless, it is not something the court can consider on a motion under Rule 12(b)(6).

[109] D.I. 9-1, Ex. A at 37 (emphasis added).  The second sentence of 6.06(b) relates to "Business Asset[s]," which specifically exclude "Retained Property."  *Id.*; *see supra* note 69.

> **accordance with their terms.** No claim for indemnification for breach of any representation, warranty, covenant or agreement contained in, or otherwise pursuant to, this Agreement (**other than any covenant or agreement (excluding this Article IX) which by its terms is to be performed or observed following the Closing**) may be asserted pursuant to this Agreement unless on or before the Survival Date (x) such claim is asserted by proper written notice in accordance with this Article IX, (y) such claim is asserted in respect of Losses incurred on or before the Survival Date, and (z) in the case of any claim for Taxes, a Governmental Authority has issued a written notice of assessment, written notice of deficiency or written notice of intent to audit with respect to the specific matters addressed in such claim, in which case such representation, warranty, covenant or agreement shall survive as to such claim until such claim has been finally resolved pursuant to this Article IX.[110]

Thus, under Section 9.01(iii), the representations, warranties, covenants, and agreements associated Section 6.06(b), which relates to Buyer's obligations "following the Closing,"[111] "**shall survive the Closing until fully performed or observed in accordance with their terms**."[112]  Section 9.01 goes on to exempt from the 18-month limitations period "any covenant or agreement . . . which by its terms is to be performed or observed following the Closing[.]"[113]  In other words, Section 6.06(b), which Defendant posits to be Plaintiff's theory of breach, has no limitations period "until fully performed."  In view of the facts in the Amended Complaint, these Section 6.06(b) obligations to "promptly transfer" the N5DM insurance proceeds were breached in 2020 when Defendant refused to transfer the insurance proceeds to Plaintiffs, at which point the cause of action began to accrue.[114]  Under Delaware law since there is no

---

[110] D.I. 11-1, Ex. 1 at 49.

[111] *Id.* at 37 ("If any Retained Property or Retained Liabilities remain vested in any Company following the Closing, . . .").

[112] D.I. 11-1, Ex. 1 at 49 (emphasis added).

[113] *Id.*

[114] 10 Del. C. § 8106(c).

limitations period until the transfer of the Retained Property is "fully performed," the limitations period for recovery would be 20 years from when the cause of action accrued, or 20 years from 2020, which would be the year 2040.  Thus, the court agrees with Plaintiffs that, to the extent Section 6.06(b) applies to the breach, the limitations period has only started to run.

For the reasons stated above, the court recommends that Defendant's arguments for dismissal on the basis of statute of limitations be denied.

### E.   Under Rule 8, Plaintiff's unjust enrichment claim may proceed

Defendant argues that "Plaintiffs' [unjust enrichment] claim must also pass the threshold inquiry of whether a contract already governs the relationship between the parties."[115]  Plaintiffs respond that "Defendant spent the greater portion of its brief arguing that no contractual agreement governs the insurance payment at issue" and that their unjust enrichment claim is a pleading in the alternative.[116]  Under Federal Rule 8, which governs the general rules of pleading in this court, "[a] party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones.  If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient."[117]  Plaintiffs have pleaded unjust enrichment in the alternative, and the court recommends that the claim proceed.[118]

---

[115] D.I. 11 at 16.  Defendant does not challenge the sufficiency of the unjust enrichment claim, just that a Delaware state court would dismiss the claim as duplicative of the breach of contract claim.

[116] D.I. 14 at 16–17.

[117] Fed. R. Civ. P. 8(d)(2).

[118] The only case from this court that Defendant cites is one in which Judge Robinson held a bench trial and in her Findings of Fact and Conclusions of Law determined that "a valid and enforceable contract governs the parties' relationship and is the basis of Air Products' unjust enrichment claim."  *Air Prod. & Chemicals, Inc. v. Wiesemann*, 237 F. Supp. 3d 192, 216 (D. Del. 2017).  Here, Defendant has yet to answer the Amended Complaint, and there has been no such finding by a trier of fact, only the court applying the standards associated with Rule 12(b)(6).

## V.    CONCLUSION

For the reasons stated above, it is recommended that Defendant's motion be DENIED.



Pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72 (b)(1), and D. Del. LR 72.1, any objections to the Report & Recommendation shall be filed within fourteen (14) days limited to ten (10) pages after being served with the same. Any response shall be limited to ten (10) pages.

The parties are directed to the Court's Standing Order in Non-Pro Se Matters for Objections Filed under Fed. R. Civ. P. 72 dated October 9, 2013, a copy of which is found on the Court's website (www.ded.uscourts.gov).

Dated:   February 4, 2022                          /s/ Mary Pat Thynge
                                                   Chief U.S. Magistrate Judge

