IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MICHAEL R. CAHILL, TRUSTEE of THE HUNT IRREVOCABLE TRUST and of THE HUNT LEGACY TRUST;<br><br>Plaintiffs,<br><br>v.<br><br>AIR MEDICAL GROUP HOLDINGS, INC.,<br><br>Defendant. | Case No. 1:21-cv-00679-WCB |

**PLAINTIFFS' ANSWERING BRIEF IN OPPOSITION TO
DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

OF COUNSEL:
*Admitted Pro Hac Vice*:

Benson L. Hathaway, Jr.
Ryan C. Cadwallader
**KIRTON McCONKIE**
50 East South Temple, Ste. 400
P.O. Box 45120
Salt Lake City, UT 84145-0120
Telephone: (801) 328-3600
bhathaway@kmclaw.com
rcadwallader@kmclaw.com

YOUNG CONAWAY STARGATT &
TAYLOR, LLP
Timothy Jay Houseal (Del. Bar ID 2880)
Jennifer M. Kinkus (Del. Bar ID 4289)
Rodney Square
1000 N. King Street
Wilmington, DE 19801
(302) 571-6682/(302) 571-6722
thouseal@ycst.com
jkinkus@ycst.com

*Attorneys for Michael R. Cahill, Trustee of
The Hunt Irrevocable Trust and of The Hunt
Legacy Trust*

Dated: October 6, 2023

30843457.1

# **TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 1

II. STATEMENT OF NATURE AND STAGE OF PROCEEDINGS ................................ 2

III. SUMMARY OF ARGUMENT ....................................................................................... 3

IV. STATEMENT OF RELEVANT FACTS ........................................................................ 4

V. ARGUMENT ................................................................................................................... 6

    A. Legal Standards for Motion for Judgment on the Pleadings Under Fed. R. Civ. P. 12(c). ................................................................................................................... 6

    B. Defendant's Untimely Motion Should be Denied Under the Law of the Case Doctrine. ............................................................................................................... 8

    C. Defendant's Reliance on the Indemnification Clause is Misplaced. ................... 10

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Arizona v. California*,
    460 U.S. 605 (1983) ............................................................................................................... 9

*Christianson v. Colt Indus. Operating Corp.*,
    486 U.S. 800 (1988) ............................................................................................................... 9

*Dalton v. 3M Co.*,
    No. CV 10-113-SLR-SRF, 2013 WL 4886658 (D. Del. Sept. 12, 2013) ............................. 9

*IBM v. Groupon, Inc.*,
    289 F. Supp. 3d 596 (D. Del. 2017) ................................................................................ 7, 12

*In re Burlington Coat Factory Sec. Litig.*,
    114 F.3d 1410 (3d Cir. 1997) ................................................................................................ 7

*In re Pharmacy Benefit Managers Antitrust Litig.*,
    582 F.3d 432 (3d Cir. 2009) .................................................................................................. 9

*Jones Lang LaSalle Americas, Inc. v. Int'l Bhd. of Elec. Workers Loc. Union No. 313*,
    338 F. Supp. 3d 381 (D. Del. 2018) .................................................................................. 1, 9

*Novartis AG v. Ezra Ventures, LLC*,
    No. 15-150-LPS, 2016 WL 5334464 (D. Del. Sept. 22, 2016) ............................................ 7

*Phillips v. Cnty. of Allegheny*,
    515 F.3d 224 (3d Cir. 2008) .................................................................................................. 7

*Pub. Int. Rsch. Grp. of New Jersey, Inc. v. Magnesium Elektron, Inc.*,
    123 F.3d 111 (3d Cir. 1997) .................................................................................................. 9


*Revell v. Port Auth.*,

    598 F.3d 128 (3d Cir. 2010)................................................................................................ 2, 7

*Rosenau v. Unifund Corp.*,

    539 F.3d 218 (3d Cir. 2008)...................................................................................................... 7

*The Medicines Co. v. Teva Parenteral Medicines, Inc.*,

    No. CV 09-750-ER, 2011 WL 13141923 n.1 (D. Del. Oct. 6, 2011) ...................................... 9

*Turbe v. Gov't of Virgin Islands*,

    938 F.2d 427 (3d Cir. 1991)...................................................................................................... 7

*Venetec Int'l, Inc. v. Nexus Med., LLC*,

    541 F. Supp.2d 612 (D. Del. 2008) .......................................................................................... 7

*Winshall v. Viacom Int'l Inc.*,

    CIV.A. 6074-CS, 2012 WL 6200271 (Del. Ch. Dec. 12, 2012)........................................... 12

**Statutes**

10 Del. C. § 8106(a)...................................................................................................................... 9

**Rules**

Fed. R. Civ. P. 12.................................................................................................................. 1, 2, 7

Plaintiffs Michael R. Cahill, Trustee of The Hunt Irrevocable Trust and of The Hunt Legacy Trust ("Hunt Trusts" or "Plaintiffs") submit this brief in opposition to Air Medical Group Holdings, Inc.'s ("Defendant") Motion for Judgment on the Pleadings pursuant to FED. R. CIV. P. 12(c) ("Motion").

## I.    INTRODUCTION

The Magistrate Judge denied Defendant's previous motion to dismiss Plaintiffs' claim for breach of contract in a well-reasoned Report & Recommendation ("R&R"), finding that the Delaware's three-year statute of limitation had not run.  The Court subsequently overruled Defendant's objection to that decision.  Defendant never filed a motion for reargument within fourteen days of the Court's decision, as required by Local Rule 7.1.5.  Defendant then filed a motion for summary judgment to dismiss Plaintiffs' claims.  The Court, again, denied the motion to dismiss the breach of contract claim.  Now at the eve of the trial, Defendant for a third time seeks dismissal under Rule 12 by way of its present Motion to Dismiss.  Having been decided twice before, Defendant's Motion, which is in substance an untimely motion for reargument, should be denied.

Defendant has not and cannot establish any "extraordinary circumstances" warranting belated reconsideration of the Court's earlier decisions to deny dismissal of Plaintiff's breach of contract claim.  *See Jones Lang LaSalle Americas, Inc. v. Int'l Bhd. of Elec. Workers Loc. Union No. 313*, 338 F. Supp. 3d 381, 385 (D. Del. 2018) ("Absent extraordinary circumstances, the law of the case doctrine cautions against revisiting previously decided issues at later stages of a case.").  Defendant's Motion raise no legitimate extraordinary circumstances to revisit the same issue.  None exist.

Even overcoming its procedural deficiencies, Defendant's Motion lacks merit. When deciding a Rule 12(c) motion for judgment on the pleadings, the motion is analyzed under the same standards that apply to a Rule 12(b)(6) motion. *Revell v. Port Auth.*, 598 F.3d 128, 134 (3d Cir. 2010), cert. denied, 562 U.S. 1178 (2011). Defendant would recast Plaintiffs' breach of contract claim as an indemnification claim, which would therefore be time-barred under applicable limitation periods. *See* D.I. 99, ¶ 16. However, Plaintiffs do not rely on the indemnification provisions to support their breach of contract claim. Nor did Defendant cite a single allegation from Plaintiffs' Amended Complaint asserting breach of the indemnification provisions in the Agreement.[1] Beyond mischaracterizing Plaintiffs' claims, Defendant asks the Court to consider factual allegations that were not pled in Plaintiffs' Complaint.

Accordingly, Defendant's motion for judgment on the pleadings does not reach Rule 12(c)'s requirements, not the least of which is to file it "[a]fter the pleadings are closed—but early enough not to delay trial . . ."

## II.      STATEMENT OF NATURE AND STAGE OF PROCEEDINGS

On May 10, 2021, Plaintiffs filed this suit against Defendant. *See* D.I. 1. The Amended Complaint was filed on June 21, 2021. *See* D.I. 9. Plaintiffs asserted that Defendant breached the retained property provision in Exhibit E-1 of the Agreement and/or unjustly enriched itself when Defendant received insurance proceeds retained by Plaintiffs under the Agreement for the repair costs of the N5DM aircraft Plaintiffs paid before executing the Agreement.

On July 10, 2021, Defendant filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), arguing, as here, that Plaintiffs' claims are time barred by the survival clause of the Agreement and the statute of limitations. *See* D.I. 13 at pp. 15. On February 4, 2022, the Magistrate Judge,

---

[1] Defendant invoked indemnification provision to support its counterclaim for breach of contract, which the Court ultimately dismissed. D.I. 95, at p.16.

30843457.1

via a Report and Recommendation (R&R), recommended that the Court deny Defendant's motion in its entirety, including the breach of contract claim. *See* D.I. 18. The Magistrate Judge also found that "the 18-month limitations period of the Agreement's survival clause does not apply…" and "Plaintiffs' filing of this suit in May 2021 is well within the 3-year statutory period." *See* D.I. 18, at p.16-20. On February 18, 2022, Defendant filed an objection to the R&R, D.I. 21. The Court overruled Defendant's objection and adopted the R&R on March 11, 2022. *See* D.I. 24. On March 25, 2022, Defendant answered the Amended Complaint.

On June 16, 2023, Defendant moved for summary judgment against Plaintiffs on all of their claims. *See* D.I. 64. On August 15, 2023, the Court denied Defendant's motion with respect to Plaintiffs' breach of contract claim and found the "the parties' intent is a factual question unsuitable for resolution on summary judgment." *See* D.I. 64, at p.11, 17.

The case is set for a jury trial on November 13, 2023. *See* D.I. 98. Six weeks prior to trial, Defendant now moves for judgment on the pleadings against Plaintiffs on breach of contract claim. *See* D.I. 99.

### III.   SUMMARY OF ARGUMENT

1.   Defendant's Motion is untimely. Defendant waited, without excuse, until shortly before trial to bring this Motion. The only plausible reason is that Defendant attempts to relitigate the statute-of-limitation issue that the Court already decided on Defendant's Motion to Dismiss. Defendant has not identified any "extraordinary circumstances" justifying reconsideration of the Court's prior, well considered decision (a decision that Defendant has already unsuccessfully challenged twice). Thus, its Motion should be denied under the law of the case doctrine.

2.   Plaintiffs did not allege in their Amended Complaint that Defendant breached the

indemnification provisions of the Agreement. The indemnification claims are outside the pleadings. Defendant's Motion wrongly relies on matters outside the pleadings, which renders the Motion moot.

## IV.  STATEMENT OF RELEVANT FACTS

Plaintiffs will only address the facts material to the Court's decision on the Rule 12(c) motion and will not repeat the lengthy factual background that has previously been amply briefed.

1. Prior to entering the Purchase and Sales Agreement ("Agreement"), Plaintiffs owned a certain Pilatus turbo-prop airplane bearing tail number N5DM ("N5DM"). *See* Memorandum Opinion and Order, D.I. 95, p. 1

2. In April 2016, the N5DM was parked at the Grand Forks Regional Airport in North Dakota when a mail cart owned by Integrated Airline Services, Inc., ("IAS") crashed into the aircraft and seriously damaged it. *See* D.I. 95, p. 2 (citing D.I. 9 Amended Complaint, ¶¶ 7–8).

3. When negotiations with IAS's insurance carrier stalled, Valley Med filed suit in November 2016 against IAS in an effort to preserve its claims against IAS and its right to IAS's insurance payout (the "Lawsuit"). *See* D.I. 95, p. 2.

4. Meanwhile, in order to mitigate damages and restore the N5DM to flight, the Legacy Trust and Valley Med paid out of pocket to restore the N5DM. *See* D.I. 9 Amended Complaint, at ¶ 10.

5. During this same time period, Plaintiffs were negotiating to sell the Legacy Trust's companies, including Valley Med, to Defendant. *Id.* at ¶ 12.

6. On April 14, 2017, Plaintiffs entered into a Purchase and Sale Agreement ("Agreement") with Defendant Air Medical. *Id.* at ¶ 13.

7. During the negotiations of the purchase with Air Medical, it became apparent that no settlement would be reached with IAS's insurance carrier before a deal was reached, so Plaintiffs disclosed the existence of the Lawsuit and retained the right to any insurance proceeds related to the Aircraft for repair costs. *See* D.I. 85-2, Exh E, at p.19, 44-45, 95-97 (Agreement, §§ 4.11, 6.06(a), and Exhibit E-1); D.I. 85-3, Exh E, at p.47 (Agreement, Schedule 4.11).

8. The Agreement listed certain Retained Property on Exhibit E-1. *See* D.I. 85-2 Exh E, at p. 44-45, 95-97 (Agreement, § 4.11, 6.06(a), and Exhibit E-1).

9. This Retained Property reserved "insurance proceeds received by the Companies on or after the date of the Agreement for repair costs of Aircraft which have been paid by the Companies prior to the date of the Agreement." *See* D.I. 85-3, Exh E, at p.55 (Agreement, Schedule 4.13(b)).

10. The Retained Property, including any potential insurance proceeds, were not being sold to the Buyers under the Agreement. *See* D.I. 85-2, Exh E, at 44-45 (Agreement, § 6.06(a) ("it being acknowledged that the parties have agreed that the Retained Property is not being sold to . . . Buyer").

11. Section 6.06(b) of the Agreement is a covenant related to acts "following the Closing". Section 6.06(b) states that: "If any Retained Property or Retained Liabilities remain vested in any Company following the Closing, Buyer shall take and shall cause such Company to take all actions necessary to promptly transfer such Retained Property at Sellers' sole cost and expense (including any payment and Retained Liability) to Sellers or its designee for no further consideration (and Sellers or such designee shall take and assume such Retained Property and Retained Liabilities)." *See* D.I. 85-2, Exh E, at 45 (Agreement, § 6.06(b)).

30843457.1

5

12. Under the Agreement, Plaintiffs maintained more than 59 million dollars from the purchase price in an escrow account for three years post-Closing. *See* D.I. 85-2, Exh E, at § 9.08, p. 54, 57 ("Escrow Amount" means $59,376,000.).

13. On or about March 24, 2020, VMF and IAS entered into a certain Settlement Agreement and Release related to the Lawsuit. *See* D.I. 85-4, Exh G, at p.11.

14. Defendant received settlement funds but refused to pay Plaintiffs the insurance proceeds as "Retained Property" under the Agreement Defendant refused. *See* the depo excerpt of Defendant's 30(b)(6) witness Brian Tierney at 56:14-61:14, attached hereto as **Exhibit A**.

15. Related to the payment of settlement proceed, the Settlement Agreement provided that "[i]n consideration of the release in Section 2 below and the other promises set forth herein, Chubb Insurance Group on behalf of its insured, IAS, shall pay VMF the total sum of [$600,000.00] (the 'Settlement Proceeds') within ten (10) days of execution of this Settlement Agreement." *See* D.I. 85-4, Exh G, at p.11. (emphasis added).

16. On May 10, 2021, Plaintiffs filed this suit against Defendant to recover the insurance proceeds that Defendant refused to turn over. Defendant breached the Agreement that executed the sale of Plaintiffs' companies when it received proceeds of an insurance claim that Plaintiffs retained for the repair costs of an aircraft they paid before executing the Agreement. *See* D.I. 9.

### V.   ARGUMENT

**A.   Legal Standards for Motion for Judgment on the Pleadings Under Fed. R. Civ. P. 12(c).**

Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). When deciding a Rule 12(c) motion for judgment on the pleadings based on an allegation

30843457.1

that the plaintiff has failed to state a claim, the motion is analyzed under the same standards that apply to a Rule 12(b)(6) motion. *Revell v. Port Auth.*, 598 F.3d 128, 134 (3d Cir. 2010), cert. denied, 562 U.S. 1178 (2011). "A Rule 12(c) motion will not be granted 'unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law.'" *IBM v. Groupon, Inc.*, 289 F. Supp. 3d 596, 600 (D. Del. 2017) (*quoting Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008)); *see also Novartis AG v. Ezra Ventures, LLC*, No. 15-150-LPS, 2016 WL 5334464, at *3 (D. Del. Sept. 22, 2016) (denying Rule 12(c) motion because the "inquiries appear to raise fact issues (potentially requiring discovery and claim construction to resolve)"). In deciding a Rule 12(c) motion, the court is "required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [nonmovant]." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

"The purpose of judgment on the pleadings is to dispose of claims where the material facts are undisputed and judgment can be entered on the competing pleadings and exhibits thereto, and documents incorporated by reference." *Venetec Int'l, Inc. v. Nexus Med., LLC*, 541 F. Supp.2d 612, 617 (D. Del. 2008) (citation omitted); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (explaining that any documents integral to pleadings may be considered in connection with Rule 12(c) motion). Ultimately, a motion for judgment on the pleadings can be granted "only if no relief could be afforded under any set of facts that could be proved." *Turbe v. Gov't of Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991).

**B.     Defendant's Untimely Motion Should be Denied Under the Law of the Case Doctrine.**

Defendant's Motion should be denied because it is an untimely attempt to reargue a legal issue already decided: whether Plaintiffs' breach of contract claim is time-barred under applicable limitation periods.

In deciding Defendants' 12(b)(6) Motion filed at the outset of this case, the R&R denied Defendant's motion to dismiss breach of contract claim, finding that Delaware's Statute of Limitations for breach of contract claim has not run, D.I. 18 at p. 16.  Upon Defendant's objection, the Court adopted this decision.  *See* D.I. 24 ("The third objection, concerning the statute of limitation, is OVERRUED").  In arguing again here that breach of contract should be dismissed, Defendant's Motion is in substance one for reconsideration, or reargument, of the Court's Order. But under Local Rule 7.1.5(a), request for reargument should have been filed within fourteen days of the Court's March 11, 2022 Order adopting the R&R.  *See* D. Del. LR 7.1.5(a).  However, Defendant never filed a motion for reargument.

Much later in its Motion for Summary Judgment, Defendant moved to dismiss Plaintiffs' breach of contract claim for the second time, which the Court denied.  Noticeably absent from Defendant's motion for summary judgment was their defense raised here of statute of limitations. Instead, Defendant waited until the eve of the trial to try, for a third time, to secure dismissal of Plaintiffs' breach of contract claim by retconning it as an indemnification claim.  But, Defendant has no basis for casting Plaintiff's breach of contract claim under the Agreement's Article IX, much less any justification for its untimely Motion.

Notwithstanding its untimeliness, Defendant cannot overcome the law of the case doctrine.  Under the law of the case doctrine, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."

30843457.1

8

*Dalton v. 3M Co.*, No. CV 10-113-SLR-SRF, 2013 WL 4886658, at *4 (D. Del. Sept. 12, 2013), report and recommendation adopted, No. CV 10-113-SLR/SRF, 2013 WL 5486813 (D. Del. Oct. 1, 2013) (*quoting Arizona v. California*, 460 U.S. 605, 618 (1983) (citation omitted)).  While the doctrine does not limit a court's power to revisit prior decisions, it instructs that "courts should be loathe [sic] to do so in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would make a manifest injustice."  *In re Pharmacy Benefit Managers Antitrust Litig.*, 582 F.3d 432, 439 (3d Cir. 2009) (*quoting Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988));  *see also, e.g.*, *Jones Lang LaSalle Americas, Inc.*, 338 F. Supp. 3d at 385.  Other "extraordinary circumstances" warranting reconsideration of a prior decision of law include the availability of new evidence or "a supervening new law."  *The Medicines Co. v. Teva Parenteral Medicines, Inc.*, No. CV 09-750-ER, 2011 WL 13141923, at *1 n.1 (D. Del. Oct. 6, 2011) (*quoting Pub. Int. Rsch. Grp. of New Jersey, Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 116–17 (3d Cir. 1997)).  Local Rule 7.1.5(a) incorporates the strict standard applicable to requests for reconsideration of previously-decided issues, stating that "[m]otions for reargument shall be sparingly granted."  D. Del. LR 7.1.5(a).

Here, Defendant has failed to establish any "extraordinary circumstances" that warrant reconsideration of the Court's decision that the Delaware's three-year statute of limitations has not run.  The Court's prior decision is not manifestly unjust or clearly erroneous.  Defendant does not introduce any new evidence nor cite any supervening new law that should change the Court's decision.  Nor does Defendant offer any circumstance upon which to consider a departure from express Rules in considering its untimely request.

Delaware law provides that no party may assert a claim for breach of contract "after the expiration of 3 years from the accruing of the cause of such action[.]" 10 Del. C. § 8106(a).  As

30843457.1

9

this Court previously and correctly pointed out: "[r]egardless of the time period, '[a] breach-of-contract claim 'accrues and the Statute begins to run at the time the contract is broken, not at the time when actual damage results or is ascertained.'" *See* D.I. 18, at p.16.  Defendant breached the contract when it received insurance proceeds but failed to turn over them in 2020.  *See* D.I. 18, at p.17-18.  Consequently, Plaintiffs' suit filed May 10, 2021, falls within Delaware's 3-year statutory period for breach of contract claim.

        C.        **Defendant's Reliance on the Indemnification Clause is Misplaced.**

Defendant relied on Section 9.08 of the Agreement, arguing that that "no claim for indemnification" can be made "after the expiration of [the] Survival Date," and therefore Plaintiffs' breach of contract claims are time-barred.  *See* D.I. 99, at p.5-6; *See* also D.I. 85-2, Exh E, at p.62.

However, Plaintiffs did not and never have alleged a claim under Section 9.08 of Article IX of the Agreement.  Plaintiffs never claimed that Defendant should indemnify them for the repair costs under Section 9.08 of the Agreement.  Rather, Plaintiffs rely on Exhibit E-1 of the Agreement and Schedule 4.13(b), contending that Plaintiffs are entitled to any "insurance proceeds received by the Companies **on or after the date of the Agreement** for repair costs of Aircraft which have been paid by the Companies prior to the date of the Agreement."  *See* D.I. 85-2, Exh E, at 95-97, and D.I. 85-3, Exh E, at p.55.  Defendant already agreed to turnover insurance proceeds related to the repair of N5DM to Plaintiffs under the Agreement.  No post contract indemnification was necessary or sought.  Defendant's unilateral interpretation of Plaintiffs' Complaint so that Plaintiffs must (and should) have additionally claimed indemnification for insurance proceeds that Plaintiffs already had rights to as "retained property"

under the Agreement is non sequitur. Defendant's additional terms do not exist in Plaintiffs' Complaint, are non-existent in the Agreement, and cannot be read into the same.

Moreover, the Court, in its earlier ruling, found that the clear language of the Agreement provides that the limitations period of the Agreement's survival clause does not apply to Plaintiffs' breach of contract claim. *See* D.I. 18, at .p. 18 ("If any Retained Property or Retained Liabilities remain vested in any Company **following the Closing**, Buyer shall take and shall cause such Company to take all actions necessary **to promptly transfer** such Retained Property at Sellers' sole cost and expense (including any payment and Retained Liability) to Sellers or its designee for no further consideration (and Sellers or such designee shall take and assume such Retained Property and Retained Liabilities)." *See* D.I. 18, at p. 18; *See also* Agreement, § 6.06(b), D.I. No. 85-2, Exh E, at p.45 (emphasis added).

The Court relied on the plain text of Section 9.01 and found that Air Medical's obligations following the Closing "shall survive the Closing until fully performed or observed in accordance with their terms." *See* D.I. 18, at .p. 19. The Court concluded "that the 18-month window does not apply to those obligations:

> 9.01 Survival. The representations, warranties, covenants and agreements set forth in this Agreement shall survive the execution and delivery of this Agreement and the consummation of the transactions contemplated hereby until the Survival Date and shall thereafter be of no further force or effect. For purposes of this Agreement, the "Survival Date" shall mean the eighteen (18)-month anniversary of the Closing Date; **provided that . . . . (iii) each other covenant and agreement of any party which by their terms are to be performed or observed following the Closing shall survive the Closing until fully performed or observed in accordance with their terms.** No claim for indemnification for breach of any representation, warranty, covenant or agreement contained in, or otherwise pursuant to, this Agreement (**other than any covenant or agreement (excluding this Article IX) which by its terms is to be performed or observed following the Closing**) may be asserted pursuant to this Agreement unless on or before the Survival Date (x) such claim is asserted by proper written notice in accordance with this Article IX, (y) such claim is asserted in respect of Losses incurred on or before the Survival Date, and (z) in

> the case of any claim for Taxes, a Governmental Authority has issued a written notice of assessment, written notice of deficiency or written notice of intent to audit with respect to the specific matters addressed in such claim, in which case such representation, warranty, covenant or agreement shall survive as to such claim until such claim has been finally resolved pursuant to this Article IX."

*See* D.I. 18, at p. 18-19 (quoting Agreement, § 9.01, D.I. 11-1, Ex. 1 at 49) (emphasis in the original). Therefore, the contractual obligation survived the closing and the cause of action did not begin to accrue until Defendant refused to transfer the insurance proceeds to Plaintiffs.

The *Winshall* case, on which Defendant almost exclusively relies, is inapposite. In *Winshall*, the defendant brought a new claim for indemnification after the eighteen-month survival period. *See Winshall v. Viacom Int'l Inc.*, CIV.A. 6074-CS, 2012 WL 6200271, at *1-2 (Del. Ch. Dec. 12, 2012), judgment entered, (Del. Ch. 2013), aff'd, 76 A.3d 808 (Del. 2013). The *Winshall* defendant claimed to have suffered on account of purported breaches of the representations and warranties in the merger agreement and demanded that the escrow money be released under the indemnification provisions. *Id.* The *Winshall* plaintiff refused to authorize the release of the escrow money and the defendant filed a complaint demanding that the money be released. *Id.* Unlike the defendant in *Winshall*, the Plaintiffs here did not request indemnification or release of the escrow money. But rather, Plaintiffs requested damages caused by Defendant's breach of the Purchase and Sales Agreement. Again, "[t]he purpose of judgment on the pleadings is to dispose of claims where the material facts are undisputed and judgment can be entered on the competing pleadings and exhibits thereto, and documents incorporated by reference." *See Int'l Bus. Machines Corp. v. Groupon, Inc.*, 289 F. Supp. 3d 596, 600 (D. Del. 2017). Here, the Court previously denied Defendant's motion precisely because at least one material fact was in dispute: "the parties' intent is a factual question unsuitable for resolution on summary judgment." *See* D.I. 64, at p.11, 17. On that basis alone, Defendant cannot support

judgment under Rule 12(c), to say nothing of Defendant's reliance on factual allegations that Plaintiffs never pled.

Finally, and for the reasons above, Defendant's argument that Plaintiffs' breach of contract claims is disguised as indemnification is without basis. Under the Agreement, Plaintiffs—not Defendant—escrowed $59 million to indemnify Defendant—not Plaintiffs—for three years post-Closing. *See* D.I. 85-2, Exh E, at p. 62, 65. Neither the terms of the Agreement nor logic support Defendant's interpretation that Plaintiffs would need to seek indemnification from their own escrowed money to pay themselves "insurance proceeds" that flowed from the litigation involving recovery of repairs for the damaged N5DM aircraft. Defendant's interpretation is further contradicted by the express purposes and obligations under the retained property provisions of the Agreement.

## CONCLUSION

For the foregoing reasons, Plaintiffs ask the Court to deny Defendant's Motion for Judgment on the Pleadings and allow the Parties to move ahead with the scheduled trial.

Respectfully submitted,

| | |
|---|---|
| OF COUNSEL:<br>*Admitted Pro Hac Vice*:<br>Benson L. Hathaway, Jr.<br>Ryan C. Cadwallader<br>KIRTON McCONKIE<br>50 East South Temple, Ste. 400<br>P.O. Box 45120<br>Salt Lake City, UT 84145-0120<br>Telephone: (801) 328-3600<br>bhathaway@kmclaw.com<br>rcadwallader@kmclaw.com<br><br>Dated: October 6, 2023 | YOUNG CONAWAY STARGATT<br>& TAYLOR, LLP<br><br>*/s/ Timothy Jay Houseal*<br>Timothy Jay Houseal (Del. Bar ID 2880)<br>Jennifer M. Kinkus (Del. Bar ID 4289)<br>Rodney Square<br>1000 N. King Street<br>Wilmington, DE 19801<br>(302) 571-6682/(302) 571-6722<br>thouseal@ycst.com/jkinkus@ycst.com<br>*Attorneys for Michael R. Cahill, Trustee of The Hunt Irrevocable Trust and of The Hunt Legacy Trust* |

30843457.1