IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MICHAEL R. CAHILL, TRUSTEE of THE HUNT IRREVOCABLE TRUST and of THE HUNT LEGACY TRUST,<br><br>*Plaintiffs/Counterclaim Defendants*<br><br>v.<br><br>AIR MEDICAL GROUP HOLDINGS, INC.,<br><br>*Defendant/Counterclaim Plaintiff.* | Civil Action No. 21-679-WCB |

### MEMORANDUM OPINION AND ORDER

On June 16, 2023, both parties filed motions for summary judgment in this contract action. Dkt. Nos. 63 & 64. On August 15, 2023, I granted each party's motion in part and denied it in part. Dkt. No. 95. Defendant Air Medical Group Holdings, Inc., has now filed what it has styled as a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). Dkt. No. 99. The plaintiffs have filed a brief in opposition, Dkt. No. 101, and Air Medical has filed a reply, Dkt. No. 102.

Although denominated a motion to dismiss, Air Medical's motion appears to be more properly characterized as a second motion for summary judgment or an untimely motion for reconsideration. For reasons explained below, however, I do not regard the characterization of the motion as disqualifying and have therefore addressed the merits of the motion . For the following reasons, Air Medical's motion is DENIED.

1

I

In my earlier order denying Air Medical's motion for summary judgment in part, I held that Air Medical's reliance in its counterclaim on a theory of indemnification under the Purchase and Sale Agreement ("the Agreement") was time-barred by the terms of the Agreement's indemnification article, Article IX. Section 9.01 of the Agreement provides that claims that are governed by the indemnification article cannot be brought after the "Survival Date," i.e., 18 months after the closing date for the Agreement. Dkt. No. 99 at 15. Based on the rationale underlying that ruling, Air Medical now contends that this lawsuit, which Hunt filed more than 18 months after the closing date for the Agreement, is also time-barred.

I disagree. Air Medical treats the indemnification article of the Agreement as if it forecloses all claims by Hunt under the Agreement that are not brought within 18 months of the closing of the sales transaction. That is, Air Medical's theory is that the 18-month limitations period applies to any claim by Hunt that Air Medical has not complied with its obligations under the Agreement.

The obligation at issue in this case, according to Hunt, is to pay over the settlement funds from the negligence action over the damage to the N5DM aircraft, funds that were ultimately paid by the insurer for the defendant in that lawsuit. Hunt argues that it is entitled to those funds because they constitute "insurance proceeds" under paragraph E-1 of the Agreement (the "Second Miscellaneous Clause"). Those insurance proceeds, according to Hunt, constituted Retained Property under the Agreement and therefore were not transferred to Air Medical as part of the sale. *See* Agreement § 6.06(a). Hunt contends that if those funds are regarded as "insurance proceeds,' within the meaning of the Second Miscellaneous Clause, Air Medical was required to remit them to Hunt when Air Medical received those proceeds at the conclusion of the negligence litigation

2

in 2020. Hunt's reasoning is that its claim is not one for indemnification, but for breach of the contract obligations, and that the 18-month limitations period set forth in the indemnification article of the Agreement does not apply to Hunt's present claim.

The text of the Agreement is consistent with Hunt's ultimate conclusion. The various sections of Article IX of the Agreement, which is denominated "Indemnification," raise the question whether the provisions of that article apply to an obligation such as the one at issue in this case, i.e., an obligation that allegedly arose after the closing of the sales transaction. But reading the various provisions of Article IX together, it is apparent that the 18-month period does not apply to all claims arising under the Agreement, and in particular the 18-month period does not apply to a claim such as Hunt's, which arose both after the closing and after the 18-month post-closing period had ended.

Section 9.01 of Article IX states that, as a general matter, "the representations, warranties, covenants and agreements set forth in this Agreement shall survive the execution and delivery of this Agreement and the consummation of the transactions contemplated hereby until the Survival Date and shall thereafter be of no further force or effect." Section 9.01 initially defines the Survival Date to mean the 18-month anniversary of the closing date for the sale transaction. However, section 9.01 then sets out various exceptions to that 18-month limitations period for asserting claims under the Agreement. It provides that certain obligations set forth in the Agreement shall survive until 60 days after the expiration of the applicable statute of limitations; that certain other obligations shall survive until the 36-month anniversary of the closing date; and that "each other covenant and agreement of any party which by their terms are to be performed or observed following the Closing shall survive the Closing until fully performed or observed in accordance with their terms." Agreement, § 9.01.

Section 9.01 further provides that no claim for "indemnification for breach of any representation, warranty, covenant or agreement" contained in the Agreement may be asserted unless, prior to the Survival Date, the claim is asserted by written notice to the other party. That provision, however, expressly does not apply to any covenant or agreement "which by its terms is to be performed or observed following the Closing." *Id.*

Section 9.08 of Article IX provides that the "obligations to indemnify and hold harmless an Indemnitee in respect of a breach of representation, warranty, covenant or agreement shall terminate on the Survival Date with respect to such representation, warranty, covenant or agreement, and no claim for indemnification hereunder may be made after the expiration of such Survival Date," unless the indemnitee has made a claim relating to such a covenant pursuant to section 9.01 prior to the Survival Date. The "survival date," for purposes of section 9.08, refers back to the definition of "survival date" in section 9.01.

Section 9.10 of Article IX provides that the rights to indemnification under Article IX "shall constitute the sole and exclusive right and remedy available to the [buyer and seller] for any and all losses or other claims relating to or arising from breaches of this agreement prior to closing and the transactions contemplated hereby to occur prior to closing."

Reading the sections of Article IX together leads to several important conclusions relevant to the parties' positions in the instant motion. First, as section 9.01 makes clear, the 18-month "survival date" for indemnification claims does not apply to any agreement that by its terms is to be performed or observed following the closing. Second, the "written notice" requirement of section 9.01 also does not apply to such agreements. Third, section 9.10 confirms the limited scope of the 18-month limitation period by stating that the right to indemnification set forth in

Article IX constitutes the sole and exclusive right and remedy to the parties for all claims "arising from breaches of this Agreement *prior to closing.*" (emphasis added).

In light of the clear exclusion of claims directed to post-closing breaches in sections 9.01 and 9.10, it is apparent that section 9.08, on which Air Medical heavily relies, applies only to those agreements not excluded from the coverage of Article IX by sections 9.01 and 9.10. That is, section 9.08, which is directed to the "Termination of Indemnification," states that the obligation to indemnify an indemnitee ends on the "Survival Date for that obligation. Section 9.01, however, makes clear that the 18-month "Survival Date" applies to only certain covenants. Other covenants have different survival dates, such as 36 months after the closing date for some claims, and 60 days following the expiration of the applicable statute of limitations for other claims. And, as noted, covenants that are by their terms to be performed or observed after the closing "shall survive the closing until fully performed or observed in accordance with their terms." The reference to the "Survival Date" in section 9.08 is thus not limited to the date 18 months after the closing, but varies according to the nature of the agreement in question. Air Medical's reliance on section 9.08 as establishing a single 18-month survival date for all covenants under the Agreement is therefore mistaken.

Hunt's theory of this case is that any "insurance proceeds" arising from the negligence lawsuit and received by Air Medical after the closing belong to Hunt as Retained Property, and that Air Medical was therefore required by the terms of the Agreement to convey such proceeds to Hunt. *See* Agreement § 6.07(b) ("If any Retained Property . . . remain vested in any Company following the Closing, Buyer shall take and shall cause such Company to take all actions necessary to promptly transfer such Retained Property at Sellers' sole cost and expense . . . to Sellers or its designee for no further consideration . . . .").

5

Hunt's theory may or may not be correct, depending largely on facts that will be developed at trial. But if it is, then Hunt is seeking recovery for Air Medical's failure to pay over the funds received from the settlement that should have been paid over to Hunt when Air Medical received them. And since Exhibit E-1 referred to insurance funds received "on or after the date of the Agreement," the obligation to pay over those funds to Hunt contemplates that it may be "performed or observed following the Closing," as provided in section 9.01. Similarly, the obligation to pay over such funds received after the closing would not be a breach of the Agreement "prior to closing," as provided in section 9.10. Hunt's claim is therefore not barred by the 18-month survival date set forth in section 9.01; it is not subject to the "written notice" requirement in section 9.01date; and it is not subject to the "sole and exclusive remedy" provision of section 9.10.

In contending that Hunt's "Retained Properties" claim is time-barred under section 9.08 of the Agreement, Dkt. No. 102 at 5–6, Air Medical argues that section 6.06(a) of the Agreement provides the mechanism for transferring Retained Properties to Hunt or its designees. That obligation, Air Medical argues, is a "pre-closing covenant" that could only be remedied through indemnification and would be barred by the 18-month limitations period set forth in section 9.01. But section 6.07 contemplates that some Retained Property may be left in Air Medical's possession after the closing. The agreement requires Air Medical to "promptly transfer such Retained Property" to Hunt or its designee. As such, that obligation constitutes an agreement that "by its terms [is] to be performed or observed following the Closing," as provided by section 9.01. It is therefore an agreement that "shall survive the Closing until fully performed or observed in accordance with [its] terms." Agreement, § 9.01.

This interpretation of the indemnification article of the Agreement and the other provisions dealing with Retained Property that remains in Air Medical's possession after the closing makes

6

sense as applied to a case such as this one. That is because under Air Medical's interpretation of the Agreement, which would require any claim by Hunt to be submitted within 18 months of the closing, Hunt would have no remedy under the Agreement if (as actually happened) the settlement of the negligence lawsuit occurred more than 18 months after the closing. And that would be true even if the Agreement provided that Hunt had an unambiguous right to the proceeds of the settlement agreement. It seems highly unlikely that the parties intended to adopt such a nonsensical approach to post-closing breaches.

II

Air Medical makes a further argument that the problem with the foregoing analysis is that it is in tension with my analysis of a portion of Hunt's motion for summary judgment in my August 15, 2023, order. In its summary judgment motion, Air Medical argued in part that if the negligence action is regarded as Retained Property, Air Medical was entitled to be indemnified for the Retained Liabilities associated with that Retained Property, i.e., for the attorney fees and costs associated with obtaining the $600,000 settlement for the damage to the N5DM aircraft. *See* Agreement § 6.06(a) ("Sellers or their designee shall assume all Liabilities (whether arising prior to, on or after the Closing) arising out of the Retained Property"; § 9.02 (Buyer "shall be indemnified by [Hunt] against any losses, out-of-pocket costs or expenses, Liabilities or other damages" that Air Medical suffers or incurs "arising out of or as a result of . . . any Retained Property or Retained Liability.").

The problem with that argument is that Hunt's contention is that it is the "insurance proceeds" that constitute the alleged Retained Property at issue in this case, not the negligence action. It is not clear that the funds Air Medical expended in obtaining a settlement of the negligence action constitute Retained Liabilities, even assuming that the court ultimately

7

concludes that the insurance-funded settlement proceeds constitute Retained Property that belongs to Hunt.

With that said, however, Air Medical's argument points out a flaw in the analysis of Air Medical's counterclaim in my earlier summary judgment order. In particular, at pages 15–16 of that order, I ruled that any indemnification claim by Air Medical would be time-barred under section 9.01 of the Agreement. However, Air Medical's request for indemnification would appear to be parallel to Hunt's claim for breach; that is, if Hunt's claim for breach is not barred by the 18-month survival date in the Indemnification article, then neither is Air Medical's, since the time limitations on asserting both claims are governed by the same provisions of Article IX of the Agreement. Therefore, because I have held that the 18-month limitations period does not apply to Hunt's "Retained Property" claim, it follows that the 18-month limitations period also does not apply to Air Medical's "Retained Liabilities" claim. For that reason, I will vacate my prior ruling granting Hunt's motion for summary judgment on Air Medical's indemnification claim for the attorney fees and costs associated with the negligence action, which was based on untimeliness. This modification of my previous order addresses only the untimeliness issue, not the merits of Air Medical's counterclaim.

III

Hunt raises several procedural objections to Air Medical's motion, none of which are meritorious. First, Hunt argues that Air Medical's motion is in essence a motion for reconsideration of the court's order on summary judgment, and as such is out of time. While it is true that Air Medical's motion challenges the court's rationale in its summary judgment order, the thrust of the motion is directed to explaining that if Air Medical's request for indemnification for its fees and costs in connection with the negligence litigation against a third party is untimely, then

so is Hunt's theory for recovery of the insurance proceeds. Because I have concluded that there is force to Air Medical's argument that the two theories stand similarly with regard to the 18-month limitation argument, it would be unreasonable to reach different conclusions with regard to the limitations analysis of the two claims. Accordingly, while it would have been preferable for Air Medical to make its current arguments promptly, in a motion for reconsideration within 14 days of the issuance of the court's summary judgment order, rather than waiting to file its motion for more than five weeks after the summary judgment order was entered, I will not deny the motion on the ground that it is in substance an untimely motion for reconsideration.

Second, Hunt argues that under the law-of-the-case doctrine, the court is bound by the decision made in the summary judgment order with regard to Air Medical's counterclaim. Again, I disagree. As Air Medical points out, the law-of-the-case doctrine "does not limit the power of trial judges to reconsider their prior decisions" at later points in the case, so long as the court explains the reasoning behind its decision to reconsider the prior ruling and takes appropriate steps to ensure that the parties are not prejudiced by reliance on the prior ruling. *Williams v. Runyon*, 130 F.3d 568, 573 (3d Cir. 1997). That is particularly true where adherence to the law-of-the-case doctrine could lead to an unjust result. *See In re Pharmacy Benefit Managers Antitrust Litig.*, 582 F.3d 432, 439 (3d Cir. 2009). Because of the parallelism between Hunt's claim and Air Medical's counterclaim for purposes of the limitations period, it would be unreasonable and unfair to treat the two differently on the ground that the court regards itself as bound by an earlier and erroneous ruling.

I have explained above the reason for my decision to reconsider the issue of the timeliness of Air Medical's counterclaim for recovery of its costs and fees associated with the negligence litigation. As for any prejudice to Hunt from the reconsideration order, Air Medical's theory was

9

part of this case throughout the discovery process and until after briefing of the parties' summary judgment motions. I have decided Air Medical's motion very shortly after briefing on the motion was completed on October 13, 2023, and the trial is still four weeks away. That should be sufficient time for Hunt to adjust to the court's revised ruling on Air Medical's counterclaim, particularly because Air Medical's counterclaim was not dismissed until after the conclusion of all discovery in this case.

Moreover, reinstating Air Medical's counterclaim should not have a major impact on the issues to be tried in this case. Air Medical's theory that it is entitled to recover the attorney fees and costs it expended to obtain the $600,000 settlement in the negligence action depends on Hunt's prevailing on its theory that the proceeds of the settlement constitute Retained Property. If Hunt is unable to show that those proceeds are Retained Property, Air Medical cannot prevail on its theory that its fees and costs are payable by Hunt as Retained Liabilities. The critical question in this case therefore remains whether the settlement proceeds are "insurance proceeds" within the meaning of the Second Miscellaneous Clause of Exhibit E-1 to the Agreement. If Hunt prevails on that issue, a determination will have to be made whether the attorney fees and costs incurred by Air Medical in the negligence litigation constitute Retained Liabilities within the meaning of section 6.06(a) of the Agreement and are therefore obligations payable to Air Medical by Hunt.

Air Medical's motion to dismiss the complaint on the pleadings is denied. The portion of my prior ruling granting summary judgment to Hunt on Air Medical's counterclaim for indemnification, Dkt. No. 95 at 15–16, is vacated.

IT IS SO ORDERED.

SIGNED this 16th day of October, 2023.

_____
WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE